Our next case is Qualcomm v. Apple, 2023-1208-09. Ms. Quasey, is it? Yes. Thank you, Judge Lurie. Good morning. May it please the Court. I hope to cover three points this morning. First, what Section 311B means when it says, quote, the basis of an IPR ground? We know you have at least three different interpretations before you, but only Qualcomm's adheres to the statutory text. And mainly, in the context of a 103 combination theory, the basis are the references alleged to be in combination. But what about what else? But Qualcomm said, as I read Qualcomm, it says the story doesn't end there. So I want to know where you think this case, they deviated from what our case allowed them to do before. In other words, you read Qualcomm as saying, do you not, that you can use, you can't use it as the basis, but it can be used to describe general knowledge of one's skill in the art, background knowledge of one's skill in the art, whatever words you want to use. So you agree with that, right? We absolutely agree with that, Your Honor. And that was my second point, that our rule in reading fits with the Phillips, the Conincklica-Phillips case and the Qualcomm. So where did the board and the petition here deviate? I guess I want to say, I mean, they deviated in form, certainly, in terms of using basis or using reference, and it deviated in form. But in substance, where did it deviate from what we said in Qualcomm was permissive? Yes, Your Honor. And I can point you to the final written decision on remand at Appendix 30 to 57. And I'll point you specifically to Appendix 29, where the board in the written decision on remand says it is basically adopting everything it did in the first original decision, when the board and Apple, everybody basically, but Qualcomm thought that a statement in the challenge patent itself could be a prior art patent. So the board just readopted its analysis. I'm sorry, what page did you say in the board decision? That's in Appendix 29, Your Honor. And there's a footnote where they say the only thing they change from their original decision are typographical errors. But they say at the top, starting on the second line, the indeed sentence, there has been no change during the remand as our application of the prior art patents and AAPA to the claims is substantially identical. And what you'll see in that analysis when you flip to the next page, page 30 of the final written decision through 57, which is Claim 1, the board there is, we're not just resting on the way the ground was defined as the basis, although certainly I think that is telling. But we are also in the court and the board also can readily police this by looking at the analysis. And the way the AAPA was used was as though it was a prior art patent. But why do you say that? Maybe I'm misreading. I obviously read that page. But indeed, there has been no change during the remand as our application of the prior art patents and AAP. So aren't they differentiating between the prior art patents and AAPA? Based on the board's erroneous statutory interpretation of Section 311B. So the board, the PTO, and the guidance would have you read the statute as though it said, as long as you've got one legitimate prior art patent or one legitimate prior art printed publication, you're through the door. And then you can use anything else. The statute does not say at least one or as long as you have one. The statute says the basis. But what if it has one? What if you've got a claim and it's got 10 limitations and nine of them are general knowledge, background knowledge? And so you've got only one limitation that is, I don't know what word I'm allowed to use, novel or whatever. So it's not a question of quantity, is it? It's quality. In that circumstance, wouldn't you use the basis to cover the novel claim? And then whatever you're allowed to use in terms of general background knowledge to cover the other limitations by necessity? You could. That is one theory, but it is not what happened here. And Phillips, the Phillips decision draws this distinction between using evidence as part of the basis. Those key references that we say over and over again, obviousness in view of reference A and reference B, the asserted references. And there is room for additional evidence to how a person of ordinary skill in the art would view those references, the lens, the perspective they would take on those references. But you have to have a legitimate basis to even satisfy Section 311B. Is there no way that this claim could have been, the petition could have been written appropriately so it would satisfy 311? I mean, if it used Majeric or whatever, however you pronounce it, is the basis and the only basis for this claim because this teaches the one novel thing and the limitations. The rest of it, the other limitations rely on general knowledge in the art, blah, blah, blah. Is there a way that you could have characterized this, not using basis, not using reference to describe the AAPA that would have been satisfactory in your view? It's possible, but that is a hypothetical because that's not what Apple did and it's not what the board did. You will not see a single reference, a single mention to common knowledge, general knowledge, background knowledge that would be, might be using AAPA, evidence that doesn't qualify as part of the basis in a permissible way. You're not going to see that anywhere in Apple's petition or in the board's decision. So this is about the clearest. Well, they talk about it as conventional, do they not? I mean, in the petition there were a few things where they talk about, we've got too much paper here. I'm not even sure that the petition uses conventional, but we're not disputing that the 674 patent itself refers to something as conventional, but pretty much anything in an obviousness case is something that was conventional or known. The Phillips, what Phillips teaches us and Qualcomm won the first decision in this appeal teaches us that it is the way the petitioner crafts their petition and their grounds and that goes back to SAS Institute. Is it a matter of lexicon of what you call different things that you use in your petition, whether it's a patent or publication, if you're going to use a declaration and you say this does not form the basis of the decision, but it's important as general knowledge? I think that is one example of how that piece of evidence could be used. If you actually bring to the board a request, you want the board to make findings on what is in the general knowledge. How, again, how that person of ordinary skill in the art would view the reference. So there might be a way to bring a ground that uses Majersik as the reference, but you would actually as a petitioner. But is there a way that we could use the AAP as this background general knowledge? I mean, I think if you read the specification, one could construe it and present it as if this was conventional general knowledge, one skilled in the art. That's what the specification kind of says, right? And we're not disputing that somebody could, Judge Prost. It is what the petitioner did here. And the reason I pointed to the board's final written decision is because the board, of course, has to follow what the petition did. So you would agree that the number of limitations, even if that AAP, the language in the AAP, if they had presented it appropriately in accord with Qualcomm, that it could cover nine out of ten limitations if that's the way the claim is drafted. If the claim has ten limitations and nine of them are found in conventional uses. Right, and yes, and that, again, that's a hypothetical. That's not our case. And we're not asking you to count limitations. I think the other side is really mischaracterizing our position. And it would depend upon what the references show. Absolutely, Your Honor. Absolutely. And that's why the test is really simple. It's something the board can easily police. It already does when it includes these handy charts in its final written decisions as to what the basis is and what the references are. And you'll see at Appendix 10 through 11, the board did just that here. It has a chart where it is labeled basis, references plural, and it lists the AAPA and Majersic. It's treating AAPA as though it is a prior art patent in combination with Majersic. And that is exactly what this court in the prior decision did. That's whether you're right or wrong, that's more formal. It's form rather than substance, right? In this case, I don't think so, Your Honor. We let petitioners craft their petitions as they want. And I don't think we're elevating form over substance. We're following the statute. And it is certainly, I think, relevant that the petitioner themselves called it the basis. They called it in the prior appeal. They told this court that this ground was— But if that were true, we wouldn't have remanded it. I mean, if that in and of itself were sufficient, then there wouldn't have been a remand. You would have just won full steam in the first case, right? That's true. I think everybody's using that in their favor. I take that. We understand that. But the PTO's interpretation of the statute just does not work. It's not what the statute says. It would really open the door to IPRs that have—you have a whiff of something. You have a microprocessor limitation in a claim. You're going to be able to find a patent or printed publication to cover that limitation. And you could bring in anything else. And that's not what Congress allowed. Your Honor, can I ask you one more quick question? Yes. I don't want to—is that the case in it cited Ravalma. You're familiar with that?  That's the one that kind of at least, you know, clarified our earlier case. And they have a pretty strong statement. It says, in terms of what the board's authority is, in terms of how it construes and applies to what's said in the petition, right? And they say there that relying on argument, the board may—nothing precludes the board from relying on arguments made by a party and doing its job as adjudicator and drawing its own inferences and conclusions from those arguments, even when the result is use of the party's submissions against them, subject, of course, to the provision of adequate notice. So that kind of suggests that the board does have some authority to get rid of the terminology that the petitioner used and just use the stuff, right? With a very hard line drawn by Section 311B as to what can validly be used as a basis in an IPR. And keep in mind, IPRs—this is just one type of proceeding in which a party can challenge a patent. You've got district court actions, ITC actions, PGRs, initial reexaminations by the examiner, where you can use a APA in a different way. But what Phillips teaches us, and I think directly to your point, Your Honor, Phillips says there is a distinction between reference A and reference B, in that case, SMILE 1 plus the WA reference, and a ground that actually asserts reference A in light of general knowledge, where you're using other evidence to actually prove up a case where you're relying on general knowledge. And we do not have the latter here. The way the board defined it, the way Apple defined it, and the way you'll see at Appendix 30 to 57, it is repeatedly using the AAPA. Again, under the mindset that the board had in its original decision, that the AAPA was some freestanding, standalone, prior art document. And it's not, as Qualcomm one held, that the remand should have been really straightforward. It went really off course because the PTO, after this court issued its decision, came up with a new definition of the basis. And so that's why we're here, back on an erroneous interpretation. But it should have been very straightforward. This should be the easiest case, because there is not a whiff of general knowledge as an assertion by the petitioner. And the statutory limit of IPRs in Section 311B cabins that, as does, of course, longstanding law under the Supreme Court in this court that it's the petitioner that drives the remand. Judge Reina has a question. Yes. I'm wondering what effect the issuance of the guidance by the PTO has on this continuing question about the jurisdiction of this court and questions regarding institution of IPRs. Can you address that real quickly? And also, now that we're looking at this post-issuance of the guidance, does this impact the question of whether we have jurisdiction under 314? No, Your Honor. I think, as the Supreme Court this term made very clear, it is the court's job to interpret statutes. The agency, there's no deference owed to the agency, whether it's in the board's decision or in the guidance. So this court has jurisdiction. Of course, this court, in the prior decision addressing the exact same statutory provision, satisfied itself of jurisdiction. And we are here properly asking the court to review this. I'll give you two specific reasons. The first is we're not challenging institution. We are challenging the cancellation of our claims. This was the only ground on which the board found the claims cancelable. It rejected Apple's other arguments. We're challenging that ultimate merits decision. And second, the Supreme Court has made clear multiple times that judicial review is retained for when the board exceeds its statutory authority, both in the Quoso decision and in Sass Institute reiterated in Thrive. And in some of those decisions, the court specifically called out this same limitation, the 311B limitation. For instance, you can't bring Section 112 arguments. It's the same limitation that's issued there. So in your view, in the future, we would be able to review determinations by the PTO involving AAPA? Yes, Your Honor. I guess the way I would think about it is if it's an issue just like here that's bound up with the statutory interpretation, it's de novo review. And that is the only question here because we're not disputing. We embrace what the board did. It used the AAPA as though it was a prior art patent. That doesn't qualify as part of the basis. It used a two-reference combination, but that two-reference combination can't be brought in an IPR, maybe in another type of proceeding, but not in an IPR. Counsel, your time is just about up. We've asked a lot of questions, so we'll give you three minutes for rebuttal. Thank you, Your Honor. I appreciate it. Ms. Tegman, you have 12 minutes. May it please the Court, Laurie Tegman for Apple. This Court should dismiss the appeal because it deprives, because Section 314 deprives this court of jurisdiction. Contrary to Qualcomm's assertion, they are challenging the institution decision here. The board looked at- Was it different in the first case? We did the first case. What's the difference between this and what we're doing here and what we did in the first case? So, candidly, at a high level, it's probably not different in the first case, but here, the issue on remand required the board to look at the petition and make a determination as to what the basis was, and that is really no, it's not materially different from what happens in COSO. Okay, so if you acknowledge we should have, if we do it here, we should have done it in the first case, then we wouldn't be here at all. I don't know how I unravel that ball, but- So, I would unravel that ball, Your Honor, by saying, look, mandate issued in that case, and mandate is final, and there's a lot of reasons that there would be nothing to do with the previous case. But here, in COSO, we learned that determining whether a ground is stated with sufficient particularity is a non-reviewable decision, and that is really not materially different than determining whether a ground, the basis of that ground is prior art patents or printed publications. There's no daylight between those two, and we know those are not reviewable, and counsel referred to what the Supreme Court has called the shenanigans exception. The shenanigans exception is not about whether you exceed your statutory authority. We know that because Thrive, the time bar, was once considered to be the time bar was beyond the statutory authority, and the dissent in Thrive talks very clearly about how this is a bad ruling because this time bar is a statutory authority. Well, if my colleagues don't have any further questions on that, I don't. So, can we move on to the rest of the questions? I have one lingering question, Judge Gross. Does it matter that in this case, we're looking at this issue with the guidance, the PTO guidance that is issued during this time, which purports to address this very question that we're talking about, and not only that, but to address it in the context of a prior appeal to us? So, I would say it does not matter that there's now guidance. I think the guidance sort of highlights the point I'm making in that it is an issue closely tied to the institution decision. The guidance is used at the institution stage exclusively. It's not about what happens at the end of the final written decision. So, it's not significant from a statutory construction perspective. We agree that there's no deference to the guidance. But it highlights how this is an institution decision or something that's closely tied, just like this Court said in Y5-1 that Section 311 through 313 is more closely tied than even the time bar, which we know is not subject to appellate review. Thank you. Okay, so I will move on to the basis question, if the Court doesn't have more questions about jurisdiction. And we would point out that Qualcomm's test and complaints about the statutory interpretation are wrong. They elevate in every facet of the analysis elevates form over substance. And the decision should be made based on the substance of our petition, and the substance of our petition uses applicant-admitted prior art to demonstrate general knowledge of one of skill in the art. Does the petition say that, or does the Board? I guess I'll ask you two questions. Does the petition, where does the petition say that? And two, even if the petition doesn't say that, where does the Board say that that's the way they're construing the petition? Okay, so the petition doesn't use sort of the magic words, general knowledge. But the petition in substance, when you look at it, it says in many places, it talks about a solution that was known at the time of filing. That's on Appendix 240. It defines something that was known at the time of filing as being depicted in Figure 1. It also says that there were no prior art solutions, a standard POC system. That's on Appendix 249. So it's using the words and citing back to the 674 patent itself, where the patent is calling it conventional, standard, known, and so. But does it matter? I mean, it uses it as a reference. It clearly was operating under a different view of what the statute said, right? So certainly at the time. The question is, can it survive that based on the authority of what they said or how the Board construed them? Absolutely, it survives. Because in substance, there's no meaningful difference than talking about general knowledge, evidenced by the admissions here in this patent that were cited. And this Board has said that there's nothing improper of supplying a limitation using general knowledge of one's skill in the art. And the idea that one couldn't combine the general knowledge that meets the limitations with something else is wrong. So to complain about it, it was using it as. Except you've got a statute that says you have to have references. The statute. And the case law said, well, general knowledge is all right. But the petition didn't say based on general knowledge. So the statute does. So it's not just semantics. Interpreting statutes, of course, is a matter of language. I agree that the statute itself does say it's only on the basis of prior art consisting of patents or printed publications. And this Court held in the last case that that means the basis can be prior art patents or printed publications. And it's still OK to use general knowledge to fill in limitations. That's your argument. But what's the basis? If I pardon the expression. I think the previous decision sets forth the analysis for why that's so, I think, well. And what it points to is general knowledge is always used. It's always appropriate to be considered in the analysis of obviousness. In fact, one would say you must start with it because you use general knowledge. But I understood Judge Lurie's question to be, at least in part, the petition doesn't talk about the general knowledge. It uses it very much as a reference. So I would disagree. It doesn't use the words general knowledge. But in substance, you look at the substance of the petition, it is using general knowledge as evidenced by applicant-admitted prior art in the subject patent. And so it is, since this Court has held in Phillips and in the previous Qualcomm case here, you may supply limitations. So the main complaint that if it's, quote, being treated like a prior art reference itself, there's simply nothing wrong with drawing a diagram or relying on a diagram that visually depicts for simplicity what is in the general knowledge of one skilled in the art. And there's nothing wrong with combining what was in the general knowledge of one skilled in the art with another reference. And doing that is appropriate, and it doesn't transform the basis of this particular ground into being general knowledge only or applicant-admitted prior art only. Because remember, we are looking at an alleged improvement patent. And under KSR, we have to look at whether the improvement is more than the predictable use of prior art elements according to their established function. But doesn't the Board's opinion sort of say, and even the instructions, the guidance by the Director, like, nobody has to do the heavy lift of doing what you just said, of kind of reconstruing the petition so that it fits within what we said in Qualcomm. The guidance sort of says, as long as you have one proper printed publication of prior art reference, whatever else you do is fine. It doesn't matter. Is that how we should read the guidance or the Board's opinion? That is not how we read the guidance or the Board's opinion. We read the guidance. Under the guidance, we believe that the Director is empowered to ferret out sham uses of prior art patents or printed publications. So if a ground is using prior art in a tokenistic or sham way, the Director would then examine the substance of the ground to determine what role the prior art patent plays in the petition's IPR challenge. And as part of that inquiry, ferreting out sham, it would look at exactly the kinds of things we say that we have present here, that the Maserat reference is used for the only thing the patent admits was not well-known, conventional, and standard in the art. And as part of the ferreting out sham uses of prior art, it would look at what kind of obvious theory do we have? Do we have an alleged improvement patent under which KSR tells us we're going to have to look at whether the improvement is a predictable use of prior art? And here, in our case, the alleged improvement is being met by a prior art printed publication Maserat. So as a result, our case is an easy one, that what is doing all the heavy lifting is, in fact, the prior art printed publication Maserat and the per-art patent methods. I'm glad you think the case is an easy one. Narrowly, on our facts, it is. And I do want to just respond to something counsel said to your hypothetical, Judge Prost, where you've got 10 limitations, and nine of them are indisputably conventional, known, and one is said to be different. And she agreed that in that scenario, in that scenario when only one limitation is said to be novel, and a prior art patent or publication meets that one limitation, we're fine. The basis of the ground is the prior art patent or printed publication. That's exactly what we have here in our facts. And again, when you look at the substance of how we presented the ground, not the labels, not the labels, not the, you know, what came first. If you look at the substance, what we are relying on for that key limitation that the patent admits is important is, in fact, a printed publication or prior art patent. And in that scenario, this is an easy case, because she's admitted that under that scenario, the basis is not the applicant made a prior art. The basis is not general knowledge evidenced by applicant prior art. The basis is the patent and the printed publication measures. Thank you, Ms. Degnan. We'll hear from Ms. Queller. And since we're going to give Ms. Swayze three more minutes, you can go up to six if you need it. Your Honors, and may it please the Court. We believe the first Qualcomm decision answered the question at issue here is that it is improper in IPR to rely solely on applicant-admitted prior art. The Board's decision and the updated guidance followed that and said... Can I ask you a threshold question that maybe you know the answer to or presumably it's not the record? Why hasn't this issue come up before? I mean, the AIA has been here for over a decade. I mean, it could be a number of things. It could be that petitioners all read the statute as your friends do and haven't done it, have dug up some prior art reference to substitute for the AAPA. Or it could be that the Board just let it go and nobody sort of woke up and said, until your friends here said, hey, read the statute, guys. You can't be doing this. Do you have at least a gut instinct about what's been going on for 12 years? My instinct is that use of AAPA first as a category is limited. People don't tend to rely on it. I think over time practitioners know not to admit things in the patent. So as we go on, there's less and less admissions. So the scope or the number that we're talking about is low. And then, quite frankly, as this Court knows, practitioners frequently come up with creative arguments. And I think it is just one of the more creative arguments challenging the language of the AIA statute. And that's why we're here. I think there are other cases, as we know from our own docket, that are following on this, that are now also making the same argument. It came up to the Director in the first initial guidance when they realized there was a split in the panels on how they were addressing AIA when this case first came up. And that's why we issued... I don't want to use too much of your time, but I appreciate that. Of course. So we believe the Director's guidance and the Board's decision is the best interpretation of the language of 311. And that follows the language of 311, the role of the background knowledge of the skilled artisan, as this Court has emphasized in both Conclique Phillips and the Qualcomm decision. And it also is consistent with this Court's precedent. But even so, didn't the Board have to do more if it had the authority? And the question is, did they have the authority to do it? But didn't it have to do more in terms of reconstruing the petition, which I think one has to do because the words there, whether they're formalistic or not, it's not laid out in the way it should be laid out for purposes of 311. So didn't the Board have to at least try to do more to rehabilitate it if it could? So the question is, what authority did they have to rehabilitate it, and did they do enough? I think first the initial question of form, the Board did not look at form over substance, and they said in particular that the way that the petition phrased the grounds was not indicative of the question at issue, which was how AAPA was used. And that's the question that this Court remanded to look at. And then I think this goes to the idea that the Board had to somehow explain or resuscitate the petition and explain why AAPA was used as general knowledge. And I don't agree that that was necessary, because as this Court said in Qualcomm, AAPA can be used because it is like general knowledge, because it is a factual foundation of what one of skill in the art knew at the time of the invention. It is not that you have to go above and beyond and say, oh, in addition, this shows what people knew. It may be like prior art, like general knowledge, or not. It isn't necessarily just because it's admitted. And as the Director's Guidance explains at Appendix 5267 to 5268, it is certainly well within a patent owner's ability to challenge that it is truly an admission. But as this Court has said in PharmaSTEM, and in PharmaSTEM they did challenge whether it was an admission, and this Court came down strongly and said it is really hard to get around the binding nature of what you admit is prior art. But the Director has acknowledged that that is possible. You can say it wasn't well known or these statements are taken out of context and we were not admitting what is prior art. That is not the case here. There was never a challenge that this was truly an admission. So as an admission, it is binding on patentee. There was nothing more that the Board had to do to resuscitate or show that the petition in some way used it as general knowledge. It used it as an admission, and that's not contested. PharmaSTEM was stated in Qualcomm, right? Yes, Your Honor. This problem is readily avoidable by stating what is otherwise admitted as actual prior art. I mean, surely there is prior art to what is being admitted, and one could have avoided the problem. I agree that it is avoidable. That doesn't mean that applicant-admitted prior art is not also usable, as this Court stated in Qualcomm, as evidence, and very strong evidence, of what was the background skill of the artist in prior art. And to find otherwise would be running up against this Court's decision in Conclique Phillips, where they said it is allowable in an AIA proceeding under 311 to combine evidence of general knowledge, like AAPA, with the prior art teachings. Anything where you say form over substance, where you can't list it, for example, in a heading, doesn't make any sense. If you can combine it with a prior art, being completely silent that you're relying on AAPA in your heading really makes no sense. In addition, saying in light of general knowledge, which Qualcomm says in their reply at page 16 was acceptable. They say that the use of general knowledge in Conclique Phillips was okay. There's really no daylight between that use and what was done here, other than the phrasing, and there's no difference in the phrasing here. I see that I'm out of time. Can you say no difference in the phrasing? Excuse me, there's no difference in the use. Oh, okay. Yes, thank you. I'm happy to answer any other questions with respect to Qualcomm's tests. However, we ask that you affirm the Director's interpretation as the best reading of the statute. Thank you, Counsel. Ms. Wiese has up to five, three minutes. Thank you, Your Honor. Facts are stubborn things. We heard reference to what is allowable, what may or might happen, what can happen. But as the Supreme Court told us, and this Court reiterated in Phillips, the AIA does not contemplate a petition that asks the Director to initiate whatever kind of IPR he chooses. The petitioner chooses how they want to use their evidence and how they want to present their ground and on what basis. And specifically on the facts here, in this case, if you look at the petition, Appendix 246 to 259, there is no reference to general knowledge. There's no invocation. There's no asking the Board to use AAPA in that way, as that function or role. It is using AAPA as a standalone system combined with Majorsic. That is contrary to the plain reading of what we understand the basis to mean in any 103 combination theory. And I would point the Court to the Qualcomm 1 decision. I counted at least 14 uses of the word use in relation to AAPA. It is how the petitioner uses the evidence. They don't get to just cite any evidence and then the Board can use it however it wants. It's limited to how the petition crafts it. With respect to institution, just a couple of quick points there. Again, we are challenging the Board's cancellation of our claims. And I would direct the Court to the Quozo decision that says Section 314D does not enable the agency to act outside its statutory limits. That's the question we have here. Judicial review remains available. It's much like this Court's decision in Medtronic where one issue was whether a reference actually qualified as statutory prior art. And that was part of the Board's ultimate... Two seconds on this, but I know it came up in the earlier Qualcomm. And would you say there's no estoppel that attaches? To Ground 2? So that's a question for another day. Okay. Yes. But the Court should be wary about estoppel if this very broad reading of the statute applies. Because if so, if all you need is one prior art printed publication or patent, that's really going to expand the scope of estoppel for petitioners in district court litigation. I clearly, I think I already covered, I clearly was not admitting that Apple is fine here. That is our fundamental dispute. But this proceeding was not the way to bring this kind of ground. Maybe elsewhere, but not here. And with respect to the argument that really, I think, is the crux of the guidance and the PTO's position on this word solely, that it comes, it's in a sentence at the end of the Qualcomm 1 decision. The way to think about that sentence, again, it comes at the end. It's not the holding of this Court. This Court held, concluded, determined that AAPA cannot form the basis. That's the holding of the Court. What the Court said there was taking perhaps the easiest example. If all you have is AAPA, you don't satisfy Section 311B. But it wasn't the holding of the Court. And we have to respect the statute which limits the basis to particular types of evidence. Apple and the Board used AAPA as though it was a prior art patent. That's using it as part of the basis, and the ground cannot be a basis for canceling these claims. Thank you, Counsel. Both Counsel, the case is submitted. Thank you.